IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| SHANIA NELLIE PRUETT, § § | |
| Plaintiff, § § | |
| v. § | Civil Action No. 7:18-cv-00110-O-BP |
| § | |
| NANCY A. BERRYHILL, § Acting Commissioner of the § Social Security Administration, § § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Shania Nellie Pruett ("Pruett") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). (ECF No. 1). After considering the pleadings, briefs, and administrative record, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **REVERSE** the Commissioner's decision and **REMAND** this action for further proceedings.

**I.   STATEMENT OF THE CASE**

Pruett filed her application for SSI on December 30, 2014, alleging a disability onset date of November 8, 1996. (Transcript ("Tr.") 77, 84–85, 94, 185–190). The Commissioner denied her application for benefits on February 26, 2015, (Tr. 77–83), and June 12, 2015, (Tr. 85–93), for insufficient evidence and denied her application upon reconsideration on June 16, 2015, (Tr. 108–10). Pruett requested a hearing before an Administrative Law Judge ("ALJ"), (Tr. 114–16), and a hearing was held by videoconference before an ALJ in Oklahoma City, Oklahoma on August 24,

2017 (Tr. 48–76). An attorney represented Pruett at the hearing. (*Id.*). Vocational Expert ("VE") Clifton King testified at the hearing. (*Id.*). The ALJ issued a decision on October 26, 2017, finding that Pruett was not disabled under the SSA and, therefore, not entitled to SSI. (Tr. 28).

In the decision, the ALJ employed the statutory five-step analysis. At step one, the ALJ found that Pruett had not engaged in substantial gainful activity since the filing of her application for SSI. (Tr. 17, Finding 1). At step two, the ALJ found that Pruett had the severe impairments of intellectual disability and major depressive disorder with mixed bipolar and anxiety. (Tr. 17, Finding 2). At step three, the ALJ found that Pruett's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404(P)(1). (Tr. 17, Finding 3). The ALJ, therefore, determined that Pruett had the residual functional capacity ("RFC") to perform:

> a full range of work at all exertional levels but with the following nonexertional limitations: The hypothetical individual would be able to understand, remember, comprehend, and carry out simple work related skills and tasks. The hypothetical individual can work with supervisors and coworkers on a superficial basis. The hypothetical individual cannot work with the public. The hypothetical individual can adapt to routine change in the working environment.

(Tr. 19, Finding 4). At step four, with this RFC, the ALJ found that Pruett had no past relevant work. (Tr. 26, Finding 5). At step five, after considering the VE's testimony and Pruett's age, education, work experience, and RFC, the ALJ determined that there were a significant number of jobs in the national economy that she could have performed. (Tr. 27, Finding 9). Thus, the ALJ ruled Pruett had not been disabled since December 30, 2014, the date the application was filed. (Tr. 27, Finding 10).

The Appeals Council denied Pruett's request for review on June 12, 2018. (Tr. 1–6). Therefore, the ALJ's decision became the Commissioner's final decision and is properly before

the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005) ("[T]he Commissioner's final decision includes the Appeals Council's denial of a request for review.").

## II. FACTUAL BACKGROUND

According to Pruett's pleadings, testimony at the administrative hearing, and the administrative record, she was 20 years old at the time of the administrative hearing. (Tr. 51). She completed the eleventh grade in a special education program. (Tr. 51, 255–261, 290). She has virtually no employment history. (Tr. 54–55, 290).

## III. STANDARD OF REVIEW

Supplemental security income benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern SSI benefits. *See* 20 C.F.R. Pt. 416. The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). For step one, the claimant must not be presently working at any substantial gainful activity to obtain disability benefits. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1572; *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002). For step two, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). For step three, disability exists if the impairment or combination of impairments meets or equals an impairment

listed in the Listing of Impairments ("Listing") found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Before proceeding to step four, the Commissioner must assess the claimant's RFC—"the most the claimant can still do despite his physical and mental limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). For step four, if the claimant's medical status alone does not constitute a disability, the impairment must prevent the claimant from returning to her past relevant work. 20 C.F.R. § 404.1520(e). For step five, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(f); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). "If the Commissioner meets this burden, the claimant must then prove [she] in fact cannot perform the alternate work." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (quoting *Crowley*, 197 F.3d at 198).

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Audler*, 501 F.3d at 447; *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if evidence is

present. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harris*, 209 F.3d at 417. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)).

## IV.   ANALYSIS

Pruett raises three issues on appeal. She claims that the ALJ erred (1) in finding that her impairments did not meet or equal section 12.05B of the Listing, (ECF No. 12 at 2, 4–9); (2) by failing to properly consider Pruett's functional limitations in determining her RFC, (*Id.* at 3, 9–12); and (3) by failing to establish the existence of work Pruett could perform, (*Id.* at 3, 13–15).

**A. The ALJ's determination at step three is supported by substantial evidence.**

At step three, disability exists if a claimant shows that her impairment meets or equals one of the impairments in the Listing and the duration requirement is met. 20 C.F.R. § 404.1520(a)(4)(iii). Whether a claimant's impairment meets the criteria of a listed impairment is usually more a question of medical fact than opinion because most of the criteria are objective and simply a matter of documentation, but it is still an issue ultimately reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996). And the ALJ is responsible for ultimately deciding the legal question of whether a listing is met or equaled. SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996); *see generally* SSR 96-5p, 1996 WL 374183, at *3; 20 C.F.R. §§ 404.1526(e), 416.926(e). When determining whether an impairment medically equals a listing, the Commissioner considers all relevant evidence in the record about such impairment, including findings from medical sources. 20 C.F.R. § 404.1526(c). Medical equivalence is found when an impairment "is at least equal in severity and duration to the criteria of any listed impairment." *Id.* § 404.1526(a).

5

The claimant has the burden of proving that an impairment or combination of impairments meets or equals a listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). "For a claimant to show that [her] impairment matches [or meets] a listing, it must meet *all* of the specified medical criteria." *Zebley*, 493 U.S. at 530 (emphasis in original). An impairment, no matter how severe, does not qualify if that impairment exhibits only some of the specified criteria. *Id.* A court will find that substantial evidence supports the ALJ's finding at step three if the plaintiff fails to demonstrate the specified medical criteria. *Selders*, 914 F.2d at 619–20.

When the ALJ's decision at step three is at issue, a reviewing court must (1) determine whether the ALJ supported the step-three determination with a discussion of the relevant evidence, and, if the ALJ failed to do so, (2) determine whether the error was harmless. *Audler*, 501 F.3d at 448–49. "Although it is not always necessary that an ALJ provide an exhaustive discussion of the evidence, bare conclusions, without any explanation for the results reached, may make meaningful judicial review of the Commissioner's final decision impossible." *Inge ex rel. D.J.I. v. Astrue*, No. 7:09-CV-95-O, 2010 WL 2473835, at *9 (N.D. Tex. May 13, 2010) (citing *Audler*, 501 F.3d at 448). "However, before the absence of reasons for adverse findings requires rejection of the unfavorable decision, a court must determine whether the error was harmless." *Id.*; *see Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" so long as "the substantial rights of a party have [not] been affected."). To be entitled to relief, the claimant must establish that the ALJ erred and that the ALJ's error calls into question the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1998).

Where, as here, the claimant has a mental impairment, the ALJ is required to follow certain mandatory steps known as the "special technique" when evaluating the severity of a claimant's mental impairment. *See* 20 C.F.R. § 404.1520a. Once the ALJ finds that a mental impairment is severe at step two, then the ALJ must determine at step three if it meets or equals a listed mental disorder of the Listing. 20 C.F.R. § 404.1520a(d). To make this determination, the ALJ must compare the medical findings about the claimant's impairment and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. 20 C.F.R. § 404.1520a(d)(2). If the impairment is severe but does not meet or equal a listed mental impairment, then the ALJ must conduct an RFC assessment. 20 C.F.R. § 404.1520a(d)(3); *see Boyd*, 239 F.3d at 705.

Applicable here is the impairment under section 12.05B of the Listing ("Listing 12.05B"). Before the ALJ entered his decision, section 12 of the Listing was significantly revised on September 26, 2016 and made effective on January 17, 2017. 81 Fed. Reg. 66,138 (Sept. 26, 2016). Accordingly, the undersigned will use the revised regulatory framework effective January 17, 2017 to review the decision of the ALJ. *Id.* n.1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."). Listing 12.05 refers to intellectual disorders. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.05. Intellectual disorders are characterized by (1) "significantly subaverage general intellectual functioning," (2) "significant deficits in current adaptive functioning," and (3) "manifestation of the disorder before age 22." *Id.* § 12.00B4a. Listing 12.05B states:

Intellectual disorder (see 12.00B4), satisfied by A or B:

. . .

B. Satisfied by 1, 2, and 3 (see 12.00H):

7

1. Significantly subaverage general intellectual functioning evidenced by a or b:

   a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence;

   or

   b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence;

   and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

   a. Understand, remember, or apply information (see 12.00E1); or
   b. Interact with others (see 12.00E2); or
   c. Concentrate, persist, or maintain pace (see 12.00E3); or
   d. Adapt or manage oneself (see 12.00E4);

   and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

*Id.* § 12.05B.

Defendant does not dispute that Pruett meets the requirements of §§ 12.05B1 and 12.05B3. (*See* ECF No. 13 at 7–10). Under the revised regulations, a claimant's intellectual disorder satisfies § 12.05B2 when she exhibits significant deficits in adaptive functioning that result in an extreme limitation of one, or marked limitation of two, of the paragraph B criteria. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00H3a. Evidence of adaptive functioning may come from medical sources; standardized tests; third party information, such as a report from a family member or friend; recent school records; reports from employers or supervisors; and the claimant's own statements about daily activities. *Id.* § 12.00H3b. In evaluating the severity of Pruett's mental impairment under the

§ 12.05B2 prong, the ALJ found that she had (1) mild limitations in understanding, remembering, and applying information; (2) marked limitations in interacting with others; (3) moderate limitations in concentration, persistence, and maintaining pace; and (4) mild limitations in adapting or managing herself. (Tr. 18). Pruett challenges the ALJ's finding that she only has mild limitations in her ability to understand, remember, or apply information and to adapt or manager herself. (ECF No. 12 at 6–8).

At the outset, the undersigned notes that the administrative record is limited. Pruett has not submitted any treating physician's opinion, and the only recent medical opinion evidence in the record is from examining consultants who performed physical and mental evaluations. (Tr. 382–95, 396–402). The ALJ has a duty "to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (per curiam) (citing *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir.1984)). An ALJ fulfills this duty by ordering a consultative examination when it is "necessary to enable the ALJ to make the disability determination." *Id.* In this case, the Commissioner denied Pruett's application for benefits twice for insufficient evidence on February 26, 2015 and June 12, 2015. (Tr. 77–83, 85–93). On January 26, 2015, the Commissioner arranged for a consultative psychological examination of Pruett to take place on February 10, 2015. (Tr. 317–320). Pruett missed her appointment twice before finally attending an examination conducted by Dr. Richard Kownacki, a consultative psychologist, on October 11, 2016. (Tr. 396–402). Dr. Kownacki's examination results were part of the record when the ALJ entered his decision. (Tr. 33). Thus, the ALJ properly developed the record on Pruett's intellectual disability by ordering a consultative psychological examination of Pruett, which was part of the administrative record when the ALJ made his decision.

The ALJ found that Pruett was mildly limited in her ability to understand, remember, and apply information. (Tr. 18). Pruett relies on school records to show her lack of progress on educational and developmental performance assessments as evidence she is markedly limited in this category. (ECF No. 12 at 7). During the third grade in April 2007, Pruett's basic reading, expressive writing, and math calculation skills were on the 1.3, 1.3, and 2.3 grade levels. (Tr. 223). During Dr. Kownacki's examination of Pruett on October 11, 2016, he performed psychological tests, including the Wechsler Adult Intelligence Scale and the Wide Range Achievement Test, to evaluate the extent of Pruett's intellectual disability. (Tr. 400–01). The academic achievement test results indicated her reading, spelling, and math skills were at the 1.9, 1.7, and 2.7 grade levels. (Tr. 401). The Commissioner concedes that Pruett is limited in her ability to understand, remember, and apply information but contends the record does not support a finding of a "marked" limitation. (ECF No. 113 at 9). To show that Pruett is only mildly limited, the ALJ relied on Pruett's hearing testimony, concluding she could perform simple maintenance and shop and generally observed that Pruett could provide information about her health and respond to questions from medical providers. (Tr. 18).

Although Pruett has cited to evidence establishing her intellectual disability, which is not in dispute, she has not cited to any other record evidence to support her claim that she is markedly limited in her ability to understand, remember, and apply information. Further, the undersigned notes that Dr. Kownacki indicated Pruett was only moderately limited in her ability to understand, remember, and carry out simple instructions. (Tr. 397). While Pruett cites to persuasive records of the extent of her limitations in this category, the undersigned is not permitted to reweigh the evidence in the record or resolve conflicts in the evidence that are for the Commissioner. *Carey*,

230 F.3d at 135. Accordingly, Pruett has not provided enough evidence to overcome the ALJ's determination, which is supported by substantial evidence.

The ALJ also found that Pruett was mildly limited in her ability to adapt and manage herself. (Tr. 18). Pruett challenges this finding by citing to record evidence of her low intelligence scores now and from the third grade and her inability to make change, manage a check book, and reconcile a credit card statement. (Tr. 6–7). Further, as noted by Pruett, Dr. Kownacki reported Pruett's "cognitive limitations" would not enable her to manage her own finances. (Tr. 400). The ALJ stated in the decision that Pruett did not allege any symptoms or limitations of this criteria and that her own statements and record evidence show she can maintain personal grooming and hygiene and can care for pets. (Tr. 18). The Commissioner argues that Pruett's ability to maintain personal hygiene and attire is an example listed by the regulations, citing 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.00G3b(iv), and that Pruett has failed to submit evidence of a "marked" limitation. (ECF No. 13 at 6).

The Commissioner is correct that Pruett's ability to manager her hygiene and dress are examples of being able to adapt or manage oneself, but the regulations also state several other examples, such as "[r]esponding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.00G3b(iv). Even so, the evidence cited by Pruett does not support a conclusion that she is severely limited in her ability to "regulate emotions, control behavior, or maintain well-being in a work setting." *Id.* § 12.00E4.

11

Although the evidence discussed by the ALJ focuses on Pruett's ability to maintain her personal hygiene and pets, this is "more than a mere scintilla" of evidence in support of the ALJ's step three determination. *Ripley*, 67 F.3d at 555. Though not cited in the ALJ's step three determination, the ALJ discussed in his RFC assessment Pruett's hearing testimony that she is able to take care of her own personal needs, which included cleaning (sweeps, mops, and does dishes), doing laundry, feeding and watering the dog, and rearranging her closet daily. (Tr. 25, 62–65). Further, the ALJ recited Pruett's testimony and noted that she showers every two days, changes her clothes twice per day, and frequently uses hand sanitizer. (Tr. 21, 65–67). The ALJ, however, also recited several activities that Pruett was unable to do, such as cook, make a shopping list, count change, manage a check book or credit card, and drive because she could not pass the driving test. (Tr. 20–21, 53–57). Moreover, the ALJ noted several instances in which Pruett appeared well groomed at her appointment with Dr. Kownacki on October 11, 2016 and at mental health appointments at the Helen Farabee Center on July 26 and July 28, 2017. (Tr. 22–24, 401, 411, 425). Finally, the ALJ also gave moderate weight to the medical evidence from Helen Farabee Center, which indicated Pruett's mental health improvement with counseling and medication. (Tr. 23–26). Substantial evidence is characterized as "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Carey*, 230 F.3d at 135. Although the record evidence considered by the ALJ does not overwhelmingly establish Pruett is "mildly" limited in her ability to adapt and manage herself, there is substantial evidence that the ALJ considered in reaching his step three determination that Pruett does not meet Listing § 12.05B2. Accordingly, the ALJ did not err at step three.

**B. The ALJ's RFC determination is not supported by substantial evidence.**

Although the ALJ's step three determination is supported by substantial evidence, the ALJ erred because he implicitly rejected the only medical opinion evidence in the record that contradicts his RFC determination.

Pruett contends that the ALJ substituted his own opinion for that of Dr. Kownacki's. (ECF No. 12 at 10). After a review of the ALJ's decision and administrative record, the undersigned agrees. The ALJ's RFC determination found, in part, that Pruett could "adapt to routine change in the working environment." (Tr. 19). In support of this determination, the ALJ discussed, in narrative form, the evidence in the record. (Tr. 19–26). This included a recitation of Dr. Kownacki's psychological evaluation of Pruett completed on October 11, 2016. (Tr. 22–23). Dr. Kownacki's evaluation included a Medical Source Statement of Ability to Do Work-Related Activities (Mental), (Tr. 397–399), and a psychological evaluation, which assessed Pruett's intellectual and mental functioning (Tr. 400–03). In his RFC determination, the ALJ thoroughly summarized Dr. Kownacki's psychological evaluation of Pruett but did not mention the Medical Source Statement. (Tr. 22–23). Further, the ALJ gave moderate weight to the opinions of the examining consultants, including Dr. Kownacki's findings. (Tr. 26). The ALJ noted that Dr. Kownacki did not place any limitations or restrictions on Pruett's ability to perform basic work activities. (*Id.*). To the contrary, though, Dr. Kownacki's Medical Source Statement indicates that Pruett has moderate limitations in understanding, remembering, and carrying out simple instructions and marked limitations in responding appropriately to usual work situations and to changes in work environment. (Tr. 397–98).

The undersigned can only speculate as to why the ALJ made these contradictory findings and failed to discuss Dr. Kownacki's Medical Source Statement. It is well established that an ALJ's

decision must stand or fall on the reasons articulated by the ALJ in his decision. *See Newton*, 209 F.3d at 455. Although an ALJ is not required to explain in his decision each piece of evidence contained in the record, *see Black v. Colvin*, No. 2:12-CV-0233, 2014 WL 1116682, at *5 (N.D. Tex. Mar. 20, 2014) (collecting cases), an ALJ is not permitted to ignore evidence that does not support the decision. *Jefferson v. Barnhart*, 356 F. Supp. 2d 663, 675 (S.D. Tex. 2004). And as recently explained by the Fifth Circuit, an ALJ "cannot reject a medical opinion without explanation." *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017) (internal quotation omitted). Dr. Kownacki's Medical Source Statement is the only objective evidence in the record about Pruett's intellectual ability and the only medical opinion from a psychologist in the record. It directly contradicts the ALJ's RFC. Accordingly, it was error for the ALJ to implicitly reject Dr. Kownacki's medical opinion without an explanation.

## C. The ALJ's error was not harmless.

"[F]ailure to adhere to the procedures proscribed by the Commissioner's regulations is generally sufficient grounds for reversal and remand of an administrative decision." *Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 515 (S.D. Tex. 2003) (citing *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987)). But such a failure does not necessarily dictate a remand for further review. The Court will affirm a decision if the ALJ's error is harmless and not remand if the plaintiff was not prejudiced due to the error. *See id.* A claimant establishes prejudice by showing that the ALJ could have reached a different outcome but for the error in question. *Newton*, 209 F.3d at 458.

Pruett argues in her brief and reply that Dr. Kownacki found she had marked limitations (1) in her ability to interact with the public, supervisors, and co-workers and (2) in her ability to respond appropriately to usual work situations and to changes in routine work setting. (ECF Nos. 12 at 14; 14 at 9). Both of these findings coupled with the VE's testimony that a person who has

marked limitations in both of these categories could not perform any jobs directly contradicts the ALJ's RFC and step three determination. (Tr. 71–72). Because there is limited discussion from the ALJ resolving this apparent inconsistency, it is "impossible to know whether the ALJ properly considered and weighed an opinion, which directly affects the RFC determination." *Kneeland*, 850 F.3d at 761. Thus, if the ALJ had considered all of Dr. Kownacki's opinions about Pruett's limitations, it is not inconceivable that the ALJ would have reached a different result. Accordingly, the ALJ's implicit rejection of Dr. Kownacki's findings was not harmless and remand is appropriate. *Id.* at 762.

### D.  Plaintiff's remaining issue.

Because this case is to be remanded to the ALJ, the Court need not address Pruett's remaining issue of whether the ALJ erred at step five as she can raise those issues before the ALJ on remand. 20 C.F.R. § 404.983 (providing that when a case is remanded from federal court, the ALJ may consider any issues relating to the claim).

## V.    RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Judge O'Connor **REVERSE** the Commissioner's decision and **REMAND** this action for further proceedings.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's Findings, Conclusions, and Recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's Findings, Conclusions, and Recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1).

Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

    Signed April 11, 2019.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE